OPINION OF THE COURT
Robert C. Williams, J.
The petitioner brings this proceeding pursuant to CPLR article 78 seeking a judgment annulling respondent’s determination denying petitioner’s temporary release and directing respondent to reevaluate petitioner’s application.
*852 On March 30, 1987 petitioner, then an inmate at Washington Correctional Facility, applied for participation in the temporary release program of the Department of Correctional Services. Specifically, a seven-day furlough was sought for the purpose of maintaining family ties. The petitioner is, and at all times herein relevant was, suffering from Acquired Immune Deficiency Syndrome (AIDS). At the time of his application, the petitioner was involved in a voluntary drug testing program in which he was receiving the experimental drug azidothymidine (AZT) for the treatment of AIDS. Following a careful screening process in accordance with 7 NYCRR 1900.4, the petitioner’s application was approved at the facility level and then referred to the Central Office of the Temporary Release Programs for mandatory review.
On July 8, 1987, the petitioner’s application was disapproved by the central office based on petitioner’s "need for a medical regimen which required continuous monitoring.” Pursuant to 7 NYCRR 1900.6, the petitioner appealed the decision. On August 19, 1987, the petitioner’s appeal was denied "due to the requirements of [his] medical needs”.
Having exhausted his administrative remedies, the petitioner initiated the instant proceeding, claiming that respondent’s determination was arbitrary and capricious, and that it violated the petitioner’s right to equal protection of the law.
Generally, judicial review of a determination denying an inmate’s participation in this type of program is limited to whether the respondent’s determination is affected by irrationality bordering on impropriety (Matter of Hoffman v Wilson, 86 AD2d 735 [3d Dept 1982]). The petitioner here has raised an equal protection argument. In Matter of Doe v Coughlin (71 NY2d 48 [1987]), the court, in a plurality opinion, held that an inmate suffering from AIDS was not denied equal protection of the law when he was denied participation in a family reunion program based on his having a communicable disease. Although there was some disagreement, the standard of review used was that the determination must have a rational relationship to a legitimate State purpose. Therefore, in this case, the decision to deny the petitioner participation in the temporary release program must bear a rational relationship to a legitimate State purpose.
The respondent claims that its decision to disapprove the petitioner’s application for temporary release was rationally related to a legitimate State interest, that interest being the petitioner’s health.
*853 There is no question that the health of prison inmates in the New York State penal system is a legitimate State interest. In fact, the State has a duty to protect the health and welfare of those in its care and custody (Matter of Von Holden v Chapman, 87 AD2d 66 [4th Dept 1982]). The issue here is whether the decision to disapprove the petitioner’s temporary release can be deemed to be rationally related to the respondent’s stated concerns.
The rationale of the respondent’s determination is clear from the record. Clark Wilson, the director of temporary release programs, based his disapproval on the recommendation of Raymond Broaddus, Commissioner of Health Services at the Central Office of Health Services. Broaddus’ affidavit sets forth the respondent’s reasons for disapproval as follows:
"Petitioner was housed in the infirmary at Washington Correctional Facility at the time of his application for furlough. This fact indicated to me that he had a definitive medical need for regular nursing and medical attention.
"Petitioner is also receiving [AZT] * * * The AZT treatment program requires regular monitoring and evaluation by trained medical personnel consisting of weekly or biweekly blood work * * *
"AZT treatment can cause skin rash, a drop in platelet count and liver damage. Such deterioration may occur in days * * *
"My primary concern is to assure that petitioner and others applying for furlough receive the appropriate medical care, including, in the petitioner’s case, regular medical monitoring associated with AZT treatment.”
The petitioner’s medical condition, as well as the record, however, do not seem to support the inferences made by the Commissioner of Health Services.
The petitioner has applied for a seven-day furlough. The extent of his medical monitoring at the facility is no more than once every two weeks. This fact is substantially admitted in Broaddus’ affidavit paragraph "7”. Under the circumstances, it is clear that a seven-day furlough would not interrupt the inmate’s medical monitoring schedule.
Respondent’s inference regarding petitioner’s housing at the infirmary while at Washington Correctional Facility may also be incorrect. The petitioner contends that all AIDS sufferers *854 were housed in the infirmary regardless of physical condition to curb unrest in the prison’s general population. Additionally, the petitioner maintains that he held a full-time institutional job while at the facility. If these allegations are true, it would further suggest that the petitioner’s condition was stable enough to withstand a seven-day furlough.
Respondent’s reasoning that deterioration from AZT treatment can occur over a period of days also does not support its disapproval of petitioner’s furlough because even if he remained at the facility, petitioner’s medical condition would not be monitored more often than every other week. If the petitioner were on furlough for seven days, he would not be exposed to any greater risk of undetected medical complications than if he remained at the facility for the seven-day period in question.
Finally, the fact that the petitioner must be administered. AZT "around the clock” every four hours has no rational bearing on whether he should be released for seven days. The petitioner is currently responsible for self-administration of his AZT medication. He is given his daily dose in the morning and must administer it to himself six times during the ensuing 24 hours. This presumably includes waking himself up in the middle of the night. There is nothing in the record to indicate that the petitioner has had any difficulty adhering to this schedule. There is no reasonable basis for the assumption that the petitioner could not carry out this same daily regimen if given a seven-day dosage of AZT.
It should be noted that the petitioner’s treating physician and facility health services director, Dr. Jay Edison, pronounced him fully ambulatory and stated that if he were not an inmate, he would continue his treatment as an outpatient with clinical visits every two weeks.
This court finds that respondent’s conclusions were based on generalizations and possibly inaccurate assumptions concerning the petitioner’s medical condition. It appears that the petitioner’s individual condition was not taken into account when his application for temporary release was reviewed by the Central Office of Temporary Release Programs.
The court also recognizes, however, that given the nature of the AIDS affliction, the petitioner’s medical condition may not be the same now as it was when his application was denied.
*855 What is appropriate here is specific findings by the Central Office of Health Services regarding this petitioner’s present physical condition, his required medical needs, and whether those needs would be compromised by a seven-day furlough.
For the above-mentioned reasons, the petition is granted in accordance with the terms set forth in this decision.